Judge, what we would ask you to do in this case is remand the case back to district court and order the clerk to enter the default. Plaintiffs or appellants properly requested entry of default after Wells Fargo Financial had been in default, they failed to answer. On the 28th of July, we filed for the default in August, August 5th, at 2.51 p.m. That was a proper move that should have been made by the court, is that they should have entered the default. But didn't the magistrate judge extend on August 8th, extend the time to file responsibility, and there was no appeal from the magistrate judge decision? And then that order was re-entered on September 1st? First, Your Honor, that extension was without authority because the magistrate judge made an order which the magistrate judge does not have authority to make. In this case, it's a dispositive motion. Well, but he has the authority to extend the time to file an answer responsibly. We had already requested entry of default, Your Honor. At that time, the clerk stops the clock and cuts off the defendant's right to submit anything to the court except for a request for relief. The defendant didn't do that. They requested extension of time after the default had already been submitted properly. Entry of default should have been made. Can I ask this? I'm a district judge and I deal with this all the time. I don't think there's any quicker way for a district judge to get reversed than if he didn't vacate this default. So wouldn't this just be a waste of time? Even if you were right, we'd send it back. If the district judge didn't vacate the default, we'd be back up here? No, Your Honor, and the reason is this. It was the defendant's culpable conduct that caused the default, and I can tell you from the hearing that we had on the issue of default or actually whether proper service was made, Mr. Buchanan states to the court, it's on page 40 of the transcript, you know, I'm only beginning to understand the allegations, the person who allegedly entered into this contract is an employee of Wells Fargo Financial California. The reason that's significant, Your Honor, is I would submit that the reason the defendant defaulted was because they were playing a shell game with their corporate identity. They failed even in their answer to submit their corporate disclosure, which they should have done. They were hiding. They did the same thing in deposition. Scott Turner, who's the senior vice president, pretended that he worked for Wells Fargo Financial California. I directly asked him, and in five pages of deposition, which are submitted, he said that he worked for Wells Fargo Financial California. He denied working for Wells Fargo Financial. He denied being the vice president. He denied being the senior vice president. I asked him in five pages of deposition that was all submitted in my motion for reconsideration, which I will state was not denied on the merits, but was denied based on a time counting rule, stating that it had been submitted more than 10 days after the entry, which it was not. But it was their culpable conduct that caused the default. Their own attorneys didn't know who the defendant was. Their own attorneys didn't know the corporate headquarters of the defendant, and they didn't know that they had been properly served because they thought it was a different defendant. The judge brings that up in the courtroom, and the judge asks Mr. Buchanan why he doesn't know the corporate headquarters of the defendant, why he doesn't know who they are. The bottom line, Your Honor, is that they were hiding. It's culpable conduct on their part. That's why the defendant didn't understand, actually the defendant's counsel, that it had been properly served because it had been served on their corporate headquarters and the defendant thought it was a different defendant than his counsel. It wasn't until the motion for summary judgment that Scott Turner actually identified who he really is, and he did that in an affidavit to the court on the motion for summary judgment. At that time, he stated, I am senior vice president of Wells Fargo Financial, and I am division manager of Wells Fargo Financial. That also is in the motion for reconsideration. It's also in the record, Your Honor. Counsel, it sounds like this is the conspiracy theory of federal pleading that we're talking about here. If you want to follow along that approach, you failed to timely object to the magistrate's order. Should we bar you in the same fashion that you're asking that Wells Fargo be barred under the earlier circumstance? It's a good question, Your Honor. I couldn't object timely to the magistrate's order because it didn't qualify under 72A because it's a dispositive motion, and it didn't qualify under 72B because the magistrate didn't issue a findings and recommendation. Therefore, there is no properly procedurally correct way to object. Well, but wouldn't you object on the grounds that it was without jurisdiction to enter the order? When was I to do that? I did that when I filed the appeal. The order was interlocutory, and it was without authority, Your Honor. But the reason that I state all this about the rules, and the only reason I even care. So you're saying if a judge enters an order without his jurisdiction, a magistrate judge, you can't take that to the district judge to correct it? There's no time limit on that. There's no rule for that. All right. Well, assuming there's no time limit, when did you file your objections with the district court? I did file the objections on that particular manner the only time the magistrate did make any findings and recommendation, which was on the motion for reconsideration. And I did that within 10 days of entry of the judgment. And the magistrate erred in counting the time calculation. The reconsideration order was entered on September 1, 2005. You're saying that within 10 days of that as calculated under Rule 6 of the Federal Rules of Civil Procedure, you filed objections? No, Your Honor, not until the judgment, because I was waiting for the magistrate. The reason I didn't file objections was during the 10 days that I had time to file, I was waiting for the magistrate to file the FNR, which she should have filed. But she never did. So the 10 days expired, and then I didn't know what I was supposed to do, because there was no rule anymore. The 10 days that expired. Do you have any authority for that proposition, that if a magistrate judge enters an order that is the magistrate judge normally would enter as a nondispositive order, but in effect it's a dispositive order, that you don't have to make objections within 10 days? I don't know where under the rules you could qualify it, Your Honor. That's not what I asked you. I asked you if you had any authority for your proposition. Your Honor, I would state that it's not a lawful order. It's beyond the Magistrate Act's authority that's granted by statute. So I take it the answer is you don't have any authority? Not off the top of my head, no, Your Honor. But I would state that it's an unlawful order. Therefore, it's not a real issue. There's nothing to object to. Could I just quickly ask you about your fraud claim on damages? You're saying that you accepted this offer and, therefore, you were losing other business. It was one case. You referred to somebody else, is that correct? Yes, Your Honor. You do work for the county. You're on their appointed counsel list, right? Yes, Your Honor. Did you take any appointed cases after this time that you accepted the offer? That's a great question, Your Honor. Here's what happened that caused all the problem, I think, for the magistrate to understand. The night that we had the contract, and it was about midnight when we contracted, I was to leave for Saipan immediately. As soon as Mr. Turner could go back to the office and have his assistants arrange my travel, I was to leave. At that time, I would have had to have contacted the liaison, the person who administers the contracts that I work with in But I didn't need to do that because the next day I called Scott Turner, and the next day he stated, well, we're going to have to move back the time for your departure because of he was busy. Because he said I have to move it back, there was no reason that I needed to suddenly get rid of my practice. He said we need to move it back to the third quarter. What about taking new cases, though? My case law is such that, Your Honor, I can finish up cases very quickly unless they go to trial. And that is what I intended to do. But again, I have a specific question. Did you take any new cases? Before I found out that he was lying? Exactly. I can't say for certain. But I can tell you for certain that there was no reason to finish up my practice quickly because I wouldn't need to. He said he was moving back my travel to the third quarter, so I figured I could work two different jobs. All I had to do was work all the time. My wife was going to basically argue that I worked all the time. That's what I did. I worked at night. I worked on the weekends. I worked all the time. So you even started working for Wells Fargo right away, looking up the banking laws, right? I believe that I did, and it would have been easier to do had I been in Saipan, but I wasn't, so I used Lewis and Clark's law library and did the best I could. But your position is that it was a year-long contract at a minimum, right? Yes. And that you had to start right away. Yes. So doesn't that take it out of the statute of frauds that it can't possibly be performed in a year? It would be at least a year and a day. Why, Your Honor, I could have been in Saipan that day. It doesn't take very long to travel. He said he was sending me immediately. But even so, you started work immediately that night or the next day, right? Yes. Right, and you knew it was going to be a year from the time you got to Saipan and you weren't going to be in Saipan. It was actually not an agreement a year from the time I was in Saipan. It was a year. Now, I may have misspoke in motion, but the bottom line is, in any event, technically under the statute of frauds, it could have been performed in a year because I could have been in Saipan within a day. So there is no reason that it couldn't be performed within a year. The reason I'm taking the issue is I think that the summary judgment motion was decided incorrectly. I wish there had been a concise statement of material facts. There was not. Well, we'll give you your full two minutes of rebuttal because you were responding to Judge Moskowitz's questions. But we'll now hear from counsel for Wells Fargo. Thank you. Thank you, Your Honors. May it please the Court, Paul Buchanan for L.A. Wells Fargo Financial. You know, the court system has been very patient with Mr. Herron and has indulged these claims now here all the way to the Ninth Circuit. The facts or the allegations are, you know, rather outlandish and involved, and I know that the court has had the opportunity to review the briefing and is aware of those allegations. Ultimately, though, this really simplifies itself to sort of a bad first-year law school exam, I think. And in this case, we have the benefit kind of of a model answer, I think, in Judge Stewart's very well-reasoned opinion here. And the primary failing, I think, of these claims is that they, as the judge acknowledged in questioning Mr. Herron, is the statute of frauds. I mean, this is absolutely the kind of thing, although it may be even more extreme than what anybody's contemplated in thinking about the statute of frauds, but it's the kind of thing that the statute of frauds is clearly designed to prevent. Somebody who says that at a blackjack table in a casino in southwest Washington they negotiated a two-year employment contract at $250,000 a year with a stranger that they just met that night, it's absurd on its face, but it's not enforceable under the statute of frauds, even if we accept Mr. Herron's sort of revised version of the timeline. It's important to note, though, that in his complaint, which is, of course, in the record, and it's under tab 1, pages 11 and 12, he attached actually to the complaint and incorporated into his allegations this May 29, 2007, e-mail in which he summarized what he said at that time were the terms of this contract, this oral contract that he was seeking to enforce. And in that document, which, again, is incorporated into his allegations, he said, we formed a legal contract for my employment with Wells Fargo Financial. I accepted your offer. Thus, we have a contract for a minimum of two years. So it is a two-year oral contract that he's seeking to enforce. He then does this sort of recapitulation of the claim and says, well, it's a one-year contract and a two-year contract as well, which, you know, I have to confess confuses me, but even if we accept it at face value, as the judge was recognizing, I believe, it is not performable within a year. He says he testifies that he doesn't know when he's going to go to Saipan, and he says on several occasions that he was going to have this year in Saipan without having to worry about a job. So I don't see any way that the statute of frauds can be circumvented in that situation, and it ought not to be. Let's assume you're correct, Mr. Buchanan. That would take care of the breach of contract claim and the breach of the covenant of good faith and fair dealing. What about the fraud claims? What's wrong with that? Yes. Well, there is, and Judge Stewart, I think, does a very nice job of laying this out in her decision. There's both problems of actual reliance and reasonable reliance. Let's talk about reasonable reliance first. One thing that Judge Stewart doesn't say, but that I would say and did say in the briefs, is we have to sort of step back first and look at this claim at face value. And is it reasonable for a sophisticated attorney who's been practicing for more than ten years to believe that after a conversation with a stranger at a blackjack table that he has a binding enforceable two-year contract with Wells Fargo and that he ought to wind down his law practice and get ready to move to Saipan? I would say on the face of it, that can't be reasonable reliance right there. But if we look at it more closely, there is, well, and then there's the fact that it's obviously barred by the statute of fraud. And he's aware of that as an attorney. So it's not reasonable to rely on this oral contract that he says existed in that situation. There's also no actual reliance. He's failed to articulate any kind of steps that he took in reliance on this agreement. And that makes some sense, actually, because the very next day, the very next day when he spoke to Mr. Turner, it was clear that there were problems and that Mr. Turner was stalling and telling him that he was going to need to talk to the CEO. And there was an express conversation the very next day in which Mr.  Turner and Mr. Heron testified that he understood that the subsequent conversation would need to happen with the CEO. So he sends a letter sort of extolling his virtues as a lawyer so that Mr. Turner will have something to show to the CEO to say why this should proceed. So Mr. Heron is well aware at that time that this is at most a maybe proposition. So it would not be reasonable to rely. And, in fact, he doesn't actually rely. He doesn't have any ---- There was also a question about damages, was there?  Well ---- In his broad claim there is a reasonable reliance, and as a result he suffered damage or something like that. Correct. It's part of the cause of action, I think. Well, that's ---- Yes, that's correct, Your Honor. And your argument is there were no damages suffered. There are no damages. It does sort of fuse with the actual reliance. He didn't actually do anything, so he didn't incur any damages. He didn't incur any cost to himself. So I think he strikes out on almost all the elements of fraud. I guess his allegation is, which we have to perhaps accept at summary judgment, that there was a misrepresentation, but he doesn't have ---- he doesn't have evidence that he did anything to rely. And the default judgment, the failure to object within 10 days, waive that claim that he now makes? Well, that's correct, Your Honor. It's, you know, the facts there were that this complaint came in, and my associate sent a letter saying we didn't believe service was proper. She followed up with a phone call, and she was scolded by Mr. Herron for speaking to his wife, who was his receptionist, and also a party to the claim, and he said that that was an ex parte contact. We then filed a motion for an extension, but about an hour before we did that, he filed this default motion. I think the magistrate clearly has the authority to grant our motion for an extension, and that's what she did. What about his argument that by making the request for default, the clerk just should have entered default, and then you should be in a position of having to make a motion to vacate the default? I think that's what he's arguing. Well, and again, he failed to make any objection to the default, to an Article III judge. He didn't take that step at the time. So even if that argument could have had any merit, I think he waived it. He also didn't raise it in his initial appellate brief, and I think he waived it again there. So I don't think, I don't think that merely because we had these almost simultaneous filings, his which violated the local rule that required that we confer, that he confer with us before he filed it in the first place, when he knew that we were representing Wells Fargo and that there was a question about service, he had simply mailed this thing in to the headquarters of Wells Fargo, and then he attempted to serve a branch here in Portland at some later date. And so there were real questions about the service, and we were trying to sort that out by having communication with him, and he, you know, attempted to sort of do a gotcha and file this motion at that time. You know, he had a remedy with the Article III judge. He failed to make use of it, and I think he's waived that claim several times over at this point. And the extension of the discovery deadline, that occurred here, and there was no objection to that, as I think, on the other side. Quite frankly, Your Honor, I can't recall whether the record indicates that he objected to the discovery extension that he sought. I think he did. I think that may be correct, Your Honor. In any event, clearly the judge had discretion. I believe we had more than nine months of discovery in this case. We had extensive depositions. Is there anything else you want to say about the case? I don't think so, Your Honor. Thank you. Thank you very much. You have two minutes for rebuttal. First off, basically, it's kind of – this has been going on throughout the whole case about the facts not being exactly accurate. Can I just ask you one question? You've alleged racial discrimination. I've never seen it alleged in quite this context. You're, I can tell, a Caucasian male. Yes, Your Honor. Who discriminated against you? The only reason I alleged that, Your Honor, was to try to catch Mr. Turner lying. It is true that he said that I would be a minority there. It is true in my understanding that there's only 1.8 percent of the population is Caucasian. He did say, when I talked to him on the phone, that the reason that he was not going forward was because he couldn't bring in anybody from the outside, not somebody white. That is true, although I didn't really want to even allege it because I thought it was kind of unfair to people who have been more seriously discriminated against who are minorities, but I didn't really know how else to catch him. There's been just a lot of lies in this case. Do you think anyone from Wells Fargo during this entire matter ever told anything true? It sounds like, from your perspective, when they got up in the morning and said it was a nice day, that they were lying. Of course not, Your Honor. Isn't that basically the gravamen of much of what you're saying, though? He lied, she lied, everybody lied? Mr. Turner has been fraudulent, and I believed him that night, and the next day he told me we confirmed everything, and then he just told me that we were going to have to move it back, and he asked me to agree to two years, which I did, but there was no extra consideration or anything, so I would state that legally that is not a contract that is enforceable. If it is, then the fourth claim, which I put in the alternative, would cover that anyway because the statute of frauds would be covered by the fact that there's writings, but there's a tape recording of the conversation, et cetera. His signature even in the e-mail would be sufficient. Okay, thank you very much. Can I ask just one more question? Yeah, go ahead. I'm kind of a technical rules guy, and you make an interesting argument. I just wanted to ask. You said that your position is that by the seeking a default from the clerk, then the magistrate really couldn't proceed because the default would have to be vacated first, and the clerk should have entered the default, right? Yes, Your Honor. That's an interesting, it's kind of an ingenious approach, but let me ask you this. It would seem to me that what you'd have to do, and then tell me whether you did this, is you'd then have to make a motion to the district judge to enter the default. If the clerk won't do it ministerially, then you'd have to make a motion to the district judge saying enter the default. Did you do that? The magistrate said it was moot and it wouldn't happen, and she granted their extension of time. When I filed for a motion for reconsideration, which was the only procedurally proper time I could think of to do it, I did do it. I did it in the motion for reconsideration to the district judge, and I don't think everybody was lying at Wells Fargo. I just think Scott Turner lied to me, and I don't think you should get away with it. Okay. Any other questions? Okay. Thank you both. The matter just heard is submitted. We will now hear argument in the case of Cooper v. T-Mobile USA, Inc. Mr. Stark, is that correct? How much time, if any, would you like to reserve? Two minutes.
judges: Thompson, Smith, Moskowitz